# No. 22-50884

## In the
## United States Court of Appeals
## For the Fifth Circuit

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

v.

ROBERTO ANGEL CARDONA,

Defendant-Appellant.

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS

APPELLEE'S BRIEF FOR THE UNITED STATES OF AMERICA

**JAIME ESPARZA**
**United States Attorney**

**MARA ASYA BLATT**
**Assistant United States Attorney**
**Western District of Texas**
**601 N.W. Loop 410, Suite 600**
**San Antonio, Texas 78216**
**(210) 384-7090/ FAX (210) 384-7031**
**ATTORNEYS FOR APPELLEE**

## Recommendation on Oral Argument

The record and the parties' briefs adequately present the facts and legal arguments relevant to this appeal. *See* Fed. R. App. P. 34(a)(2)(C). The United States therefore recommends that oral argument is unnecessary and would not significantly aid the Court in its decisional process. *See id.*

# Table of Contents

Recommendation on Oral Argument ....................................................................ii

Table of Contents.............................................................................................iii

Table of Authorities .......................................................................................iv

Jurisdiction.......................................................................................................1

Statement of the Issue ....................................................................................1

Statement of the Case .....................................................................................2

Summary of the Argument ...........................................................................14

Arguments and Authorities...........................................................................15

The District Court's Decision to Deny Cardona's Motion for Compassionate Release/Amendment 782 Relief Should Be Affirmed Because It Correctly Applied the Law and Did Not Clearly Err in Its Findings of Fact ......................................................15

Conclusion......................................................................................................25

Certificate of Service .....................................................................................25

Certificate of Compliance .............................................................................26

# Table of Authorities

**Cases**                                                                                                    **Pages**

*Apprendi v. New Jersey*, 530 U.S. 466 (2000) ............................................................6

*Chavez-Mejia v. United States*, 138 S. Ct. 1959 (2018) .............................................22

*Dillon v. United States*, 560 U.S. 817 (2010) ...............................................21, 22, 24

*Johnson v. United States*, 135 S. Ct. 2551 (2015) ......................................................12

*Hughes v. United States*, 138 S. Ct. 1765 (2018) .......................................................21

*United States v. Cardona*, 540 F. App'x 296 (5th Cir. 2013) ............................. 5, 10

*United States v. Chambliss*, 948 F.3d 691, 693 (5th Cir. 2020) ............................ 16, 21

*United States v. Davis*, 838 F. App'x 118 (5th Cir. 2021) ........................................22

*United States v. Doublin*, 572 F.3d 235 (5th Cir. 2009) ...........................................21

*United States v. Evans*, 587 F.3d 667 (5th Cir. 2009) ..............................................18

*United States v. Guerrero*, 870 F.3d 395 (5th Cir. 2017) ..........................................24

*United States v. Henderson*, 636 F.3d 713 (5th Cir. 2011)................................16, 22, 23

*United States v. Jackson*, 27 F.4th 1088 (5th Cir. 2022).............................................17

*United States v. Lawton*, 193 F.3d 1087 (9th Cir. 1999) ..........................................23

*United States v. Perez*, 27 F.4th 1101 (5th Cir. 2022) .........................................17-18

*United States v. Ponce*, 917 F.2d 846 (5th Cir. 1990) ...............................................23

*United States v. Thompson*, 984 F.3d 431 (5th Cir. 2021) ........................................17

**Statutes**

28 U.S.C. § 2255 ...........................................................................................................10

## Table of Authorities con't

**Statutes**                                                    **Pages**

28 U.S.C. § 1291 ..................................................................................1

21 U.S.C. § 863 ...................................................................................3

21 U.S.C. § 846 ................................................................................3, 5

21 U.S.C. § 841(a) ...........................................................................3, 5

21 U.S.C. § 841(b)(1)(A) ....................................................................3

18 U.S.C. § 3742(a) .............................................................................1

18 U.S.C. § 3582(c)(2) ................................................................. 11, 22

18 U.S.C. § 3582(c)(1)(A) ..........................................................*ad passim*

18 U.S.C. § 3553(a) .....................................................................*ad passim*

18 U.S.C. § 3142(g) ...........................................................................17

18 U.S.C. § 1963(a) .............................................................................3

18 U.S.C. § 1962 ...............................................................................18

18 U.S.C. § 1962(d) .............................................................................3

18 U.S.C. § 3553(a)(1) .................................................................. 17, 18

18 U.S.C. § 1956 .................................................................................2

18 U.S.C. § 1952 .................................................................................2

18 U.S.C. § 1201 .................................................................................2

## Rules

Fed. R. App. P. 32 ..............................................................................26

## Table of Authorities con't

**Rules**                                                                 **Pages**

Fed. R. App. P. 34 ...............................................................................i

Fed. R. Civ. P. 59(e) .........................................................................11

## Guidelines

USSG § 3D1.4 ............................................................................. 5, 19

USSG § 3D1.2 ............................................................................. 4, 19

USSG § 3D1 .................................................................................18

USSG § 3B1.1(a) ...........................................................................10

USSG § 2S1.1(a)(1) .........................................................................5

USSG § 2E1.1 .............................................................................. 4, 18

USSG § 2E1.1(a)(2) app. note 1 ....................................................19

USSG § 2D1.1(c) ...................................................................... 20, 21

USSG § 2D1.1(b)(2) .......................................................................10

USSG § 2B3.2(b)(2)(B) ..................................................................10

USSG § 1B1.13 ........................................................................... 3, 17

USSG § 1B1.10 ...............................................................................22

USSG § 1B1.10(a)(1) ......................................................................11

USSG Sentencing Table Ch.5, Pt. A (2021), comment. n. 2 .............5

USSG Sentencing Table Ch.5, Pt. A (2021) .............................. 20, 24

USSG App. C, Amdt. 782 (Supp. Nov. 2012-Nov. 2016) .....................*ad passim*

**Table of Authorities con't**

**Guidelines**                                                                                              **Pages**

USSG App'x C para. 604 (2000) ..............................................................................23

No. 22-50884

IN THE
UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

v.

ROBERTO ANGEL CARDONA,

Defendant-Appellant.

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS

BRIEF FOR THE UNITED STATES OF AMERICA

## Jurisdiction

This is an appeal from a final judgment of the district court in a criminal case.

The jurisdiction of this Court is invoked pursuant to 28 U.S.C. § 1291 and 18 U.S.C. §

3742(a).

## Statement of the Issue

Whether the district court properly exercised its discretion by denying

Cardona's First Step motion for compassionate release because it correctly applied the

law and did not clearly err in its assessment of the facts?

1

## Statement of the Case

### A. Background.

Cardona was a member of the Barrio Azteca ("the BA"), a violent paramilitary gang throughout West Texas, southern New Mexico, and Ciudad Juarez, Mexico since 1986. ROA.905. The BA's primary objectives are to protect its members inside and outside of the prison system, to protect non-gang members for a fee, to compete and fight with rival gangs, to generate income by importing and distributing narcotics, and to collect "cuota"[1] or street tax from drug dealers operating on BA turf. ROA.905. BA's members engage in a wide range of criminal activities both within and outside of the prison system including murder, assault, kidnapping, extortion, intimidation, robbery, and drug trafficking. ROA.907.

Cardona's BA membership began some time prior to 2004. ROA.920. He ultimately achieved the rank of lieutenant in charge of all BA criminal activity in El Paso, Texas. ROA.919, 920. He also participated in the gang's street level activities in El Paso, Texas, and while incarcerated in prison. ROA.919. As a BA member, Cardona helped coordinate the importation and distribution of controlled substances including marijuana, cocaine, and heroin into and within the United States. ROA.919. He also participated in the collection of extorted fees or "cuotas" from drug dealers operating on BA turf, monitored the distribution of that money to BA members

---

[1]     In the trial transcripts and pleadings, "cuota" was also referred to as "quota," "renta," or "taxes." *See, e. g.,* ROA.176.

incarcerated in jail and prison, and ordered the physical discipline, including assaults, kidnapping, and murder, of non-compliant BA members. ROA.919-920.

**B. The Indictment.**

In March 2011, a grand jury sitting in the Western District of Texas El Paso Division approved a third superseding, 12-count indictment that charged Cardona and 34 co-defendants. ROA.171-227. Cardona was charged with three counts—an 18 U.S.C. § 1962(d) RICO conspiracy (Count One), a 21 U.S.C. § 846 conspiracy to distribute controlled substances (Count Two), and a 21 U.S.C. § 863 conspiracy to import controlled substances (Count Three). ROA.171-227.

By statute, a person found guilty of participating in a § 1962 RICO conspiracy "shall be fined under this title or imprisoned not more than 20 years (or for life if the violation is based on a racketeering activity for which the maximum penalty includes life imprisonment)." 18 US.C. § 1963(a). The alleged predicate racketeering activity in Count One included, inter alia, the distribution of controlled substances in violation of 21 U.S.C. § 841(a) & (b)(1)(A), which carries a maximum term of life imprisonment. ROA.200-201. With that predicate racketeering activity, Cardona was thus made subject to a statutory maximum penalty of life imprisonment. 18 U.S.C. § 1963(a).

**C. Plea Agreement and Hearing.**

In August 2011, Cardona entered into a plea agreement with the government in which he agreed to plead guilty to Count One of the indictment charging him with

3

RICO conspiracy in exchange for, among other things, the ultimate dismissal of Counts Two and Three by Government motion. ROA.596, 374. The plea agreement was reviewed by the district court. ROA.727.

Later that month, the district court conducted a plea hearing where it extensively reviewed the plea agreement with Cardona. At the plea hearing, Cardona was advised and agreed that he understood that "the maximum statutory penalty for your offense…is up to life of incarceration." ROA.725. No mandatory minimum term of imprisonment applied to Cardona's offense. ROA.725. The district court also explained how the Guidelines would be calculated and told Cardona that the resulting sentencing range would serve only as an advisory guide to the court. ROA.725-726.

### D. The PSR.

Cardona's offense level calculation was made pursuant to USSG §§ 2E1.1 and 1B1.3 with a USSG § 3D1.2 grouping analysis as follows:

**Group: I (Narcotics)** The Narcotics Group carried a base offense level of 38, with enhancements for possession of a dangerous weapon, use of violence, distribution of narcotics in a correctional facility, importation of a controlled substance, and Cardona's role as a lieutenant in the Barrio Azteca, resulting in an offense level of 50. ROA.923-925.

**Group II (Extortion and Robbery):** The Extortion Group carried a base offense level of 18, which, when coupled with specific offense characteristics and enhancements for involvement in a kidnaping and for being a lieutenant in the Barrio Azteca, reached an offense level of 29. ROA.925-926.

**Group III (Money Laundering):** Cardona's PSR Group III calculations were identical to Group I. ROA.926-927.[2]

The PSR combined the three groups pursuant to USSG § 3D1.4 which resulted in a combined adjusted offense level of 52. ROA.927. Cardona received a 3-level reduction for acceptance of responsibility, yielding a final combined total offense level of 49. ROA.927-928.

Cardona's total offense level was reduced from 49 to 43, the highest possible offense level on the USSG sentencing table. ROA.928.; *see* USSG Sentencing Table Ch.5, Pt. A (2021), comment. n. 2. Based on a total offense level of 43 and Cardona's placement in criminal history category VI, his advisory guidelines sentencing range was life imprisonment. ROA.931, 936.

**E. The Sentencing Hearing.**

In February 2012, the district court held a 3-hour-long sentencing hearing. *See United States v. Cardona*, 540 F. App'x 296, 297 (5th Cir. 2013). At the outset, the district court reviewed the available penalties: "You are here this afternoon having pled guilty to the offense of engaging in the affairs of an enterprise through a pattern of racketeering activity, which carries a statutory penalty of life incarceration, $4

---

[2]     The USSG. calculations for Group III are identical to those for Group I because the base offense level and specific offense characteristics for money laundering are determined by the offense from which the laundered funds were derived. USSG § 2S1.1(a)(1). ROA.926-927. In this case, the underlying conduct was the §§ 846/841 drug counts and that conduct was also alleged as a substantive overt act for the Group I RICO conspiracy. ROA.923, 926.

million fine, five years of supervised release, and a $100 special assessment."
ROA.369.

The district court then reviewed the PSR, reminding Cardona that it assigned him a total offense level of 43 and a Criminal History Category VI, making his guideline range life incarceration to be followed by five years of supervised release. ROA.369-370. Defense counsel and the district court also specifically discussed life imprisonment as the maximum, not minimum, sentence for Cardona's offense:

> Defense Counsel: Now, I did discuss with Mr. Cardona, that if he didn't [plead guilty] and was uncomfortable with pleading guilty and now looking at a life sentence, he had a right to [trial].
>
> The Court: Let's clarify he was always looking at a life sentence from the moment he entered a plea to this offense, correct?
>
> Defense Counsel: I understand that that is the maximum sentence, Your Honor.
>
> The Court: Okay.
>
> Defense Counsel: However, the Guidelines were going to call for all sorts of sentencing in between whatever his Base Offense Level was going all the way up to life.

ROA.373.

In an extended allocution, defense counsel then discussed the manner in which he received discovery from the Government prior to negotiating and signing his plea agreement. ROA.370-371. Counsel also objected to the application of any enhancements under the Sentencing Guidelines based upon *Apprendi v. New Jersey*, 530 U.S. 466 (2000). ROA.372-373, 377-378. The district court confirmed that Cardona

6

had no objections regarding the discovery provided by the government, that he was fully informed of the basis of the government's case when he signed his plea agreement, and that he did not wish to change his plea prior to sentencing. ROA.373-375, 377.

Cardona's objections were noted for the record. ROA.380. The district court then heard direct testimony and cross-examination from three witnesses regarding the following 5 enhancements under the Sentencing Guidelines ROA.380-493.

*Aggravating role:* The PSR identified Cardona as a lieutenant in the Barrio Azteca. In addition, Barrio Azteca member Ramon Cano testified that Cardona was running the gang in El Paso during a period in 2002 and that Cano turned quota collected from drug dealers over to Cardona. ROA.386-388. Cano also testified that Cardona participated in meetings in El Paso where the gang leadership decided whether and how to discipline members and outsiders with violence. ROA.389-390, 438-440.

Barrio Azteca member Alejandro Frausto testified that Cardona ordered violent retaliations as a leader in the gang; that Cardona was in charge of the Barrio Azteca when they were both incarcerated in federal prison in Otero County, New Mexico; and that Cardona declared that he would be in charge of El Paso when he was released from prison. ROA.432, 435-436, 440-443. Cardona was open about his desire to move up in the BA ranks. ROA.450.

*Use of violence*: Cardona pleaded guilty to the use of violence and intimidation. ROA.182, 190-192, 194. At sentencing, both Ramon Cano and Alejandro Frausto testified that Cardona participated in ordering violent retaliation. Frausto testified that Cardona directed the Barrio Azteca membership in a war against another gang in prison at Otero County, and that he witnessed Cardona physically assault a drug dealer when collecting quota. ROA.432-436, 441, 458.

*Distributions of narcotics in prison:* Cardona pleaded guilty was to distribute narcotics. R. 182-183. At sentencing, Ramon Cano testified that, while Cardona was directing him as leader of El Paso in 2002, the money he turned over to Cardona was used to purchase narcotics and provide financial support for incarcerated Barrio Azteca members. ROA.388.

*Participation in kidnaping:* Cardona pleaded guilty to participation in kidnapping. ROA.182. Barrio Azteca member Richard Sanchez testified that Cardona and another leader in the gang planned a kidnaping that Sanchez later executed with other gang members. ROA.466-467, 469-470. The victim of the kidnaping was ambushed in a private home in Texas, tasered, knocked out using paint thinner, tied up with duct tape, driven to Mexico, and was never found. ROA.473, 475-481. Sanchez was officially made a BA member because of his participation in the kidnaping. ROA.482.

*Possession of a weapon*: Member Alejandro Frausto testified that Cardona stated he was armed with a gun during a meeting of 20 to 30 Barrio Azteca members at a tattoo shop during an intra-gang conflict. ROA.446-448.

After hearing all of the above testimony, defense counsel re-urged his objection to all of the proposed sentencing enhancements, arguing, *inter alia*, that the sentencing witnesses were not credible. ROA.494-499.  After hearing from the Government, the district court ruled in Cardon's favor on the enhancement for possession of a weapon but adopted the rest of the PSR's sentencing guideline calculations. ROA.500-502.

With the elimination of the weapons enhancement, Cardona's final combined total offense level decreased to 47 which, because that level still exceeded the highest offense level on the sentencing table by four levels, was again reduced to offense level 43. ROA.502, 538. Cardona therefore remained subject to a Guidelines sentence of life imprisonment. ROA.538.

In extended colloquies, Defense counsel and Cardona then argued against a life sentence. ROA.503-510.  Government counsel maintained that a life sentence was appropriate and reasonable, but never suggested that it was mandated by the RICO statute. ROA.511-513. The district court then sentenced Cardona to life imprisonment. ROA.513-514, 162-168. Cardona timely appealed. ROA.170.

**F. Direct Appeal, § 2255 Petition, and § 3582 Motions.**

**1.     Direct Appeal.** On direct appeal, Cardona asserted, on plain error, that the district court mistakenly believed that the offense of conviction carried a

mandatory minimum sentence or treated the Guidelines as mandatory. *Cardona*, 540 F. App'x at 297. In September 2013, this Court held that the district court completely understood the statutory mandatory minimums and maximum to which Cardona was subject, the operation of, and sentencing options available under, the USSG, and the extent of its sentencing discretion. *Id.* It also held that the district court correctly applied the USSG §§ 3B1.1(a) (aggravating role), 2D1.1(b)(2) (use of violence), and 2B3.2(b)(2)(B) (participation in a kidnapping) sentencing enhancements when "the record [was] viewed in its entirety," including its reliance upon the credible testimony it heard at sentencing. *Cardona*, 540 F. App'x at 297-298. Finally, this Court held that Cardona's 5th and 6th Amendment rights, and the Supreme Court's decisions in *Apprendi* and *Booker*, were not offended because the district court considered facts at sentencing that were neither found by a jury nor admitted by him. *Id.* at 298. Cardona's conviction and substantive sentence were therefore affirmed.[3] *Id.*; ROA.245-248. His petition for certiorari was denied on January 27, 2014. ROA.250.

    **2.**    **Post-Conviction Collateral Filings.** On February 17, 2015, Cardona filed a motion to vacate his sentence pursuant to 28 U.S.C. § 2255 raising four issues: 1) That his guilty plea violated the 5th and 6th Amendments and was obtained by fraud or trickery, 2) that trial counsel was ineffective by failing to obtain discovery and

---

[3]    This Court did however remand to the district court for the limited purpose of removing an inadvertent checkmark on the district court's statement of reasons which incorrectly stated that a mandatory minimum sentence was imposed. *Cardona*, 540 F.3d at 298.

conduct an independent investigation of the law and facts of his case, 3) that his sentence was unconstitutional and entered in violation of *Apprendi* and the 5th and 6th Amendments because it was based on facts not found by a jury nor admitted by him, and 4) that trial counsel was ineffective by failing to argue that his sentence was unlawful. ROA.252-293, 294-295. Pursuant to the district court's order, the Government responded. ROA.302-516. The district court dismissed the motion with prejudice in January 2017 by finding that reasonable jurists would not debate the merits of his claims. ROA.551, 552.

In March 2017, Cardona filed a Fed. R. Civ. P. 59(e) motion seeking reconsideration of that decision; it was denied by the district court that same month. ROA.554-569, 570-575. On May 12, 2017, Cardona appealed that decision which this Court ultimately dismissed as untimely in September 2017. ROA.576-577, 583-584.

**3.    18 U.S.C. § 3582 Filings.** In April 2015, Cardona filed a motion for reduction of sentence pursuant to 18 U.S.C. § 3582(c)(2), USSG 1B1.10(a)(1), and Amendment 782. ROA.519-523. The district court responded by letter informing him that a procedure was being developed to review and process the large number of § 3582(c)(2)/782 requests it had received. ROA.524. Cardona was further advised that if he was "eligible to benefit from a reduced sentence by virtue of the amendment" he would be contacted. ROA.524. In 2017, the district court denied the motion. ROA.579.

In April 2016, the district court appointed the Federal Public Defender ("FPD") to determine whether Cardona was eligible to file a claim subsequent to the Supreme Court's decision in *Johnson v. United States*, 135 S. Ct. 2551 (2015). ROA.528-530. After reviewing Cardona's case, the FPD filed a motion with the district court seeking to withdraw because Cardona was not eligible for § 2255 relief under *Johnson*. ROA.531-533. The district t court granted the motion to withdraw with an extensive opinion and denied Cardona a certificate of appealability ("COA"). ROA.536-551. Cardona did not appeal.

In February 2022, Cardona filed a First Step Act request for a reduction in sentence and compassionate release with U.S.P. McCreary's Reduction in Sentence Coordinator where Cardona is still incarcerated; the request was denied in May 2022. ROA.592. Cardona timely appealed the initial denial of his request to McCreary's warden in May 2022 alleging medical and procedural sentencing grounds as extraordinary and compelling reasons for compassionate release.[4] ROA.594-595. The

---

[4] "My Extraordinary & Compelling reasons are: The day of sentencing the Goverment [sic] used count(s) 2 & 3 to give tue [sic] a life sentence; after the Judge imposed the sentence the Government [sic] moved to dismiss count(s) 2 & 3, which the Courts granted. The Bureau of Prisons is miscomputing my sentence to life on dismissed count(s) 2 & 3 as shown on the (J&C). The only remaining count that I am convicted of 18 U.S.0 [sic] § 1962 as shown on the (J&C) only carries 20 years. So I am respectfully requesting that Warden J. Gilley recommend on my behalf that a motion for Compassionate Release be filed to United States District Court in the Western District of Texas." ROA.594.

Warden denied his request later that month because of Cardona's history of violence.[5] ROA.599.

On June 29, 2022, Cardona wrote to the district court asking for a determination of whether he was eligible for a compassionate release reduction in sentence pursuant to § 3582(c)(1)(A)(i). ROA.589-590. The Court interpreted the letter as a motion appealing from the warden's decision, and the Government responded. ROA.601-616, 617-619 (Exhibits); ROA.620-635, 636-637 (Exhibits).

After considering Cardona's motion, the Government response, the sentencing guidelines and its policy statements, the Sentencing Reform Act, and the 18 U.S.C. § 3553(a) facts, the district court denied the motion on September 21, 2022. ROA.638-643. Cardona received the district court's order on September 26, 2022, and executed a notice of appeal on September 27, 2022, which was timely filed on October 3, 2022. ROA.646-647.

Cardona filed his opening brief *pro se*. The Government now responds.

## Summary of the Argument

The district court properly exercised its discretion by denying Cardona's request for compassionate release and a First Step Act § 3582(c)(1)(a)(i) sentence reduction. The record reflects a firm factual and legal foundation for the district

---

[5]    As of May 23, 2022, Cardona "exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf" on the grounds raised in his February 2022 motion and was eligible to appeal directly to this Court pursuant to § 3582(c)(1)(A)(i). ROA.598-599.

court's § 3553(a) analysis and its conclusion that Cardona's life sentence was appropriate. By statute, and even under today's guidelines, Cardona would still be subject to a life sentence. That fact together with his flawed understanding of the operation of the guidelines defeats his assertion that the district court erred in its calculation of his advisory guideline sentencing range. Because he cannot demonstrate any abuse of discretion, the district court's denial of his request for § 3582(a)(1)(A) relief, and his sentence, should be affirmed by this Court.

Cardona also fails to demonstrate the district court abused its discretion by denying him an Amendment 782 sentence reduction. No precedent in this Circuit supports Cardona's assertion that a claim for Amendment 782 relief constitutes an "extraordinary and compelling reason" within the meaning of § 3582(c)(1)(A)(i). However, even if Amendment 782 can be considered as part of a § 3582(c)(1)(A)(i) analysis, the district court still retains full discretion to deny such relief. Here, the district court reasons for denying such relief were thorough and explicit—first, that Cardona's total adjusted offense level calculation would remain above 43 thus ensuring an across-the-board advisory sentencing guideline range of life imprisonment, and second, that its § 3553(a) analysis led it to conclude that the community would be endangered by Cardona's early release because of his documented history and continuing propensity for violent conduct.

Because Cardona would still be subject to an advisory guideline sentencing range of life based purely on drug amount even if sentenced today, and therefore

ineligible for Amendment 782 relief, and because the district court's § 3553(a) analysis is legally and factually sufficient, Cardona's attempt to demonstrate an abuse of discretion fails. This Court should therefore affirm the district court's order to deny him an Amendment 782 sentence reduction and to maintain his life sentence.

## Arguments and Authorities

**The District Court's Decision to Deny Cardona's Motion for Compassionate Release/Amendment 782 Relief Should Be Affirmed Because It Correctly Applied the Law and Did Not Clearly Err in Its Findings of Fact.**

Cardona's attempt to reverse the district court's denial of his First Step/Amendment 782 motion fails for three reasons. First, Cardona's sentencing range was correctly calculated and, even if it was not, a sentencing range miscalculation does not constitute an extraordinary and compelling reason warranting a sentence reduction under §3582(c)(1)(A)(i). Second, he wholly fails to establish he is no longer dangerous as contemplated by § 3553(a) to justify a First Step Act sentence reduction. Finally, Cardona has never been eligible for an Amendment 782 sentence reduction, but even if he was, the retroactive application of Amendment 782 would not change his applicable guidelines range and would be inconsistent with U.S. Sentencing Commission policy. Because Cardona fails to establish any extraordinary and compelling reason for a sentence reduction, the district court's denial of First Step/Amendment 782 relief should be affirmed by this Court.

15

**A.    The appropriate standard of review.**

This Court reviews a denial of a motion for compassionate release or for an Amendment 782 sentence reduction for an abuse of discretion. *See United States v. Chambliss*, 948 F.3d 691, 693 (5th Cir. 2020) (abuse of discretion standard applies to review of motions for compassionate release); *United States v. Henderson*, 636 F.3d 713, 717 (5th Cir. 2011) (abuse of discretion standard applies to review of Amendment 782 motions). A district court abuses its discretion when its decision is grounded in a legal error or clearly erroneous facts. *Id.* On this record and given the district court's thoroughgoing explanation of its reasoning for denying relief, Cardona cannot sustain his burden to demonstrate an abuse of discretion.

**B.    The district court's legal and factual reasons for denying Cardona's request for a First Step Act compassionate release are supported by this Court's precedent and the record; its decision should therefore be affirmed as a proper exercise of discretion.**

The First Step Act as codified in 18 U.S.C. § 3582(c)(1)(A)(1) sets forth the provisions for modifying and reducing a term of imprisonment to grant compassionate release. A prisoner seeking a § 3582(c)(1)(A)(1) sentence reduction in this Circuit bears the burden of satisfying three distinct criteria: (1) That there are extraordinary and compelling reasons justifying the sentence reduction, (2) that the reduction must be "consistent with applicable policy statements issued by the sentencing commission", and (3) that the prisoner must persuade the district court

that his early release would be consistent with the sentencing factors in 18 U.S.C. §3553(a). *United States v. Jackson*, 27 F.4th 1088, 1089 (5th Cir. 2022).

The Sentencing Commission's policy statement in USSG § 1B1.13 contains a non-exclusive list of what constitutes an extraordinary and compelling reason to include the prisoner's (1) medical conditions, (2) age, (3) family circumstances and (4) other reasons. *See* USSG § 1B1.13; *Jackson*, 27 F.3rd at 1090 (quoting *United States v. Thompson*, 984 F.3d 431, 433 (5th Cir. 2021) (§ 1B1.13 "does not bind a district court when considering a prisoner's motion for compassionate release," although it may still "inform the district court's analysis").  It also permits a district court to grant relief for an extraordinary and compelling reason "after considering the factors set forth 18 U.S.C. § 3553(a), to the extent that they are applicable," and if it determines "the defendant is not a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g)." USSG § 1B1.13.

This Court holds the district court must also consider the § 3553(a) factors and that a "prisoner must persuade the district court that his early release would be consistent with…§ 3553(a)." *Jackson*, 27 F.4th at 1089. In short, a district court may consider all pertinent information in its § 3553(a) factor analysis to determine whether it should reduce a defendant's sentence and by how much.[6] *United States v. Perez*, 27

---

[6]    This Court has not decided whether a § 3852(c)(1)(A)(i) motion, as opposed to a direct appeal, is the proper procedural vehicle for resolving alleged errors in sentencing range calculations. However, it need not reach that issue because, as discussed below, Cardona's sentencing calculation argument fails as a matter of law. ROA.639, 640, 641.

F.4th 1101, 1104 (5th Cir. 2022) (relying on *United States v. Evans*, 587 F.3d 667, 673 (5th Cir. 2009)); ROA.641 (district court adopting broad view of information it may consider in relation to its § 3553(a) analysis as unconstrained by the extraordinary and compelling reasons listed in § 1B1.13).

Here, this Court "may safely 'assume that [the district court] considered [the § 3553(a) factors]'" because "the context, briefing, and record make clear…the…factors were at issue and before the [district] court." *Perez*, 27 F.4th at 1104  (quoting *United Evans*, 587 F.3d at 673). In his brief, Cardona alleges that with the application of § 3582(c)(1)(A)(i) and Amendment 782, his correct offense level score should be 24, which with a criminal history category IV would bring his advisory guideline sentencing range to 100 to 125 months. *See Appellant's Brief* at 7-8. The argument reveals a fatal misunderstanding of how his total offense level was calculated at sentencing.

More specifically, Cardona misapprehends the operation and interaction between USSG § 2E1.1, which controls sentencing for § 1962 crimes, and the USSG § 3D1 grouping analysis authorized by § 2E1.1 when there is more than one underlying the racketeering offense. ROA.921-922. As detailed in the PSR, Cardona pled guilty to Count I of the third superseding indictment which alleged a violation of 18 U.S.C. § 1962 through 3 overt acts: "Group I - Count 1 (Act A) Possession with Intent to Distribute Drugs and Importation of Heroin, Cocaine, and Marijuana,

Group II - Count 1 (Act E) Robbery and Extortion, and Group III - Count 1 (Act F) Conspiracy to Launder Monetary Istruments [sic]." ROA.922.

Pursuant to USSG § 2E1.1(a)(2) app. note 1, each underlying offense is analyzed "as if contained in a separate count of conviction," and is then subject to a § 3D1.2 grouping analysis. ROA.921-922. Once the combined offense level is determined under USSG § 3D1.4, the offense level of the Group with the highest offense level is then used to determine the USSG § 3D1.4 enhancements. ROA.922. In Cardona's case, the Group with the highest offense level—50--was based upon the Count One overt act related to his possession with intent to distribute and importation of heroin, cocaine, and marijuana, which started with a base offense level 38. ROA.923. Restated, Cardona's adjusted total offense level was determined based upon the overt acts contained within Count One, not upon the evidence supporting the dismissed Counts Two and Three (although, as discussed above that information could have been used as relevant conduct).[7] Bottom line, for the purpose of Guideline calculation, it is the group that holds the *highest* total offense level, *not* the lowest, as Cardona maintains, that controls the grouping analysis and ultimately the final total adjusted offense level. *See Appellant's Brief* at 7 (arguing that Group II calculation should be used to determine total adjusted offense level).

---

[7]     In his brief, it appears that Cardona has confused § 2E1.1 "Groups II and III," with "Counts Two and Three" that were ultimately dismissed by the district court pursuant to a government motion. *See Appellant's Brief* at 7-8.

That said, Cardona is correct that his total adjusted offense level would be reduced under today's guidelines. The drug amount for which he was held responsible—30 kilograms of heroin and more than 150 kilograms of cocaine—would result in a base offense level 36. *See* ROA.921; USSG § 2D1.1(c) (Drug Quantity Table) (base offense level 36 applies to at least 30 KG of heroin or at least 150 kilograms of cocaine). When the 10 special characteristic points sustained by the district court (and which Cardona does not challenge) are added in, Cardona's total offense level would be 46—a distinction without a difference because any total offense level over 43 is adjusted down to 43. *See* ROA.923-924; USSG Sentencing Table Ch.5, Pt. A (2021) (reflecting a life sentence in all criminal categories, including criminal history category I, with a total offense level 43). When adjusted down to 43 pursuant to the USSG Sentencing Table and added to his criminal history category VI, Cardona's advisory guideline sentencing range would therefore still be life. *See* USSG Sentencing Table Ch.5, Pt. A (2021); ROA.923-924.

Finally, Cardona's claim that he is no longer dangerous simply does not comport with the record and his "long history of violent conduct" including his participation in such conduct while incarcerated. ROA.642. If nothing else, the three hours of testimony the district court heard at sentencing about Cardona's participation in assaults, kidnappings, and murders supports its finding that "the nature and circumstances of Cardona's offense and his history and characteristics" demonstrate he is still "a danger to the safety of the community." ROA.642.

In short, a district court may modify a sentence, after considering the applicable 18 U.S.C. § 3553(a) factors, if "extraordinary and compelling reasons warrant such a reduction." 18 U.S.C. § 3582(c)(1)(A)(i). In this case a preponderance of the evidence demonstrates such reasons do not exist, and the district court provided specific reasons for that conclusion "having considered Cardona's motion, the Government's response, the guideline…the Sentencing Reform Act, the guideline policy statements, and 18 U.S.C. § 3553(a)." ROA.642; *see Chambliss*, 948 F.3d at 693. Its well-reasoned order denying Cardona's motion for First Step Act compassionate release, and his sentence, should therefore be affirmed by his Court.

## C. The district court did not abuse its discretion by denying Cardona's motion for Amendment 782 relief.

Section 3582(c)(2) authorizes the discretionary modification of a defendant's sentence "in the case of a defendant who has been sentenced to a term of imprisonment based on a sentencing range that has subsequently been lowered by the Sentencing Commission." 18 U.S.C. § 3582(c)(2); *see United States v. Doublin*, 572 F.3d 235, 237 (5th Cir. 2009). In November 2014, Amendment 782 effectively revised the USSG § 2D1.1(c) Drug Quantity Table and "reduced the base offense level by two levels for most drug offenses." *Hughes v. United States*, 138 S. Ct. 1765, 1774 (2018); *see* USSG App. C, Amdt. 782 (Supp. Nov. 2012-Nov. 2016); USSG § 2D1.1(c).

A two-step process governs a motion for a sentence reduction. *Dillon v. United States*, 560 U.S. 817, 826-827 (2010). The district court must first determine if

defendant is eligible for a reduction under USSG § 1B1.10 and the extent of the

reduction authorized by the amended guidelines range. *Henderson*, 636 F.3d at 717.

Assuming eligibility, step two requires the "court to consider any applicable § 3553(a)

factors and determine whether, in its discretion, the reduction authorized by [§

1B1.10] is warranted in whole or in part under the particular circumstances of the

case." *Dillon,* U.S. 560 at 827; *see Henderson*, 636 F.3d at 717. At step two, the

resentencing court must adequately address both parties' concerns and have a

"reasoned basis" for the new sentence, if any, it imposes. *Chavez-Mejia v. United States*,

138 S. Ct. 1959, 1964 (2018).

In the first instance, there is no precedent to support Cardona's assertion that a

claim for Amendment 782 relief can be considered an "extraordinary and compelling

reason" for compassionate release pursuant to § 3582(c)(1)(A)(i), nor should there be

because the statutory predicate for a § 3582/782 relief is § 3582(c)(2). *See United States*

*v. Davis*, 838 F. App'x 118, 118 (5th Cir. 2021) (citing *Dillon*, 560 U.S. at 820 for

proposition that defendant eligible for sentence reduction "[p]ursuant to 18 U.S.C.

§ 3582(c)(2)" if sentenced based on a sentencing range that has subsequently been

lowered by a retroactive amendment to the Sentencing Guidelines).

Cardona also claims that the district court abused its discretion by denying him

an Amendment 782 sentence reduction because, if sentenced today, his sentence

would be dramatically reduced. *See Appellant's Brief* at 7-8. The argument fails for two

reasons. First, in 2017 the district court denied Cardona an Amendment 782 sentence

reduction, and he never appealed that decision. ROA.519-523 (Amendment 782 motion); ROA.579 (order denying same). Second, the district court did in fact re-consider the issue in relation to the motion at issue in this appeal but rejected Cardona's argument that his total offense level would drop in any dispositive way if sentenced under today's guidelines. ROA.641-642.

Cardona's claims for Amendment 782 relief appear to stem from his fundamental misunderstanding that relevant conduct allows the sentencing court to consider criminal conduct that is unpled or described in dismissed counts. *See Appellant's Brief* at 4, 5-6; *United States v. Ponce,* 917 F.2d 846, 848 (5th Cir. 1990) ("relevant conduct" includes conduct underlying "offenses for which a defendant has been indicted but not convicted, as well as the factual basis of dismissed counts."); *Hernandez,* 633 F.3d at 374 (foreclosing challenges to sentences within the statutory maximum as reasonable even if based only on judge-found facts). And the one case he cites in support of his position, does not conform to this Court's precedent. *See Appellant's Brief* at 6 (citing *United States v. Lawton,* 193 F.3d 1087; (9th Cir. 1999), *superseded by statute,* USSG App'x C para. 604 (2000).

Most salient, is the fact that even with the application of a 2-level, Amendment 782 reduction, Cardona's total offense level would still remain above 43 to result in an advisory guideline sentencing range of life. With an Amendment 782 reduction, the drug amount for which Cardona was held responsible—30 kilograms of heroin and more than 150 kilograms of cocaine—would result in a base offense level 36. *See*

ROA.921. When the 10 special characteristic points sustained by the district court (and which Cardona does not challenge) are added in, Cardona's total offense level would be 46. ROA.923-924. When adjusted down to offense level 43 pursuant to the USSG Sentencing Table and added to his criminal history category VI, Cardona's advisory guideline sentencing range would therefore still be life. *See* USSG Sentencing Table Ch.5, Pt. A (2021); ROA.923-924. In other words, Cardona is not eligible for Amendment 782 relief because his sentencing range is not lowered as a result of the Sentencing Commission's amendment to the guidelines. *See United States v. Guerrero*, 870 F.3d 395, 296 (5th Cir. 2017).

However, even if eligibility was established, the district court still retains the discretion to determine whether the § 3553(a) factors support the conclusion that a sentence reduction "is warranted in whole or in part under the particular circumstances of the case" *Id.* (quoting *Dillion* at 827). In this case, the district court explicitly rejected that conclusion and held that

For these reasons, the district court did not abuse its discretion in any way because even if Cardona was eligible for Amendment 782 relief, his advisory guideline sentencing range did not change. His sentence should therefore be affirmed by this Court.

## CONCLUSION

The district court's order denying Appellant Robert Angel Cardona a sentence reduction pursuant to 18 U.S.C. § 3582(c)(1)(1)(A) and/or Amendment 782, and his life sentence, should be affirmed by his Court.

Respectfully submitted,

JAIME ESPARZA
United States Attorney

By:    /s/ Mara Asya Blatt
   MARA ASYA BLATT
   Assistant United States Attorney
   Texas Bar No. 02473050

## Certificate of Service

I hereby certify that on February 1, 2023, I filed this document with the Fifth Circuit of Appeals using the CM/ECF filing system and will cause a copy of this document to be delivered by U.S. Mail to Appellant *pro se* Roberto Angel Cardona at Reg. #132777-280, United States Penitentiary-McCreary, P.O. Box 3000, Pine Knot, Kentucky 42635.

/s/ Mara Asya Blatt
MARA ASYA BLATT
Assistant United States Attorney
Western District of Texas
601 N.W. Loop 410, Suite 600
San Antonio, Texas 78216
(210) 384-7090/ FAX (210) 384-7031

25

**Certificate of Compliance**

**Certificate of Compliance with Type-Volume Limitation,
Typeface Requirements, and Type Style Requirements**

1. This brief complies with the type-volume limitation of Fed. R. App. P.

32(a)(7)(B) and contains **5,795** words, excluding those parts of the brief exempted by

Fed. R. App. P.  32(a)(7)(B)(iii).

2. This brief complies with the typeface requirements of Fed. R. App. P.

32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) and has been

prepared in a proportionally spaced typeface using Microsoft 365 Word in 14-point

Garamond.

/s/ Mara Asya Blatt
MARA ASYA BLATT
Assistant United States Attorney

Dated: February 1, 2023